# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AZANIAH BLANKUMSEE, #326-398 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-15-3495 |
| CARLA BUCK, RN, | * | |
| Defendant | * | |

## MEMORANDUM OPINION

Pending is Carla Buck's renewed for Motion for Summary Judgment. ECF No. 40. Plaintiff Azaniah Blankumsee did not file an opposition.[1] A hearing is not necessary to resolve the pending motion. *See* Loc. R. 105.6 (D. Md. 2016). Because there is no genuine dispute that Buck did not violate Blankumsee's constitutional rights in performing a medical examination only, and not a mental health assessment, Buck's Motion for Summary Judgment will be granted.

## BACKGROUND

Blankumsee initially filed this case against Buck and six other defendants, alleging that on August 2, 2015, he was subjected to an unwarranted strip search for contraband at Western Correctional Institution (WCI),[2] and then placed naked in an isolation cell, where he remained for two days. Compl., ECF No. 1. An x-ray later revealed there was no contraband hidden in his

---

[1] The Clerk informed Blankumsee that he could file a response with affidavits and exhibits in support. ECF No. 41. Thereafter, Blankumsee filed a Motion to Appoint Counsel, ECF No. 42, and a Motion for Recusal, ECF No. 43, both of which I denied, ECF Nos. 45, 47, but he did not respond to Buck's dispositive motion. More recently, he has requested a case summary, again without responding to the pending motion. ECF No. 49.

[2] Blankumsee is presently incarcerated at the Maryland Correctional Institution–Hagerstown. ECF No. 48.

body. Blankumsee alleged that the strip search and placement in the isolation cell violated Eighth Amendment proscriptions against cruel and unusual punishment. *Id.*

Blankumsee faults Buck, a medical provider, for approving his placement in the isolation cell without medical justification and at the request of correctional officers. *Id.* at 3. He alleges that he suffered panic attacks while in the isolation cell. *Id.* at 4. It is undisputed that Blankumsee suffers from multiple mental disorders, which could qualify as objectively serious medical conditions. At the time Buck evaluated and approved Blankumsee for placement in an isolation cell, she did not have access to his mental health records, which were within the custody of the Psychology Department, and was not required to do a mental health assessment of Blankumsee. Nor did the medical records to which she did have access reflect any mental health issues that might caution against placing Blankumsee in an isolation cell. Aug. 2, 2015 Med. Rec., ECF No. 14-4.

On March 15, 2017, I granted the six other Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 27). Order, ECF No. 38. In the same Order, I denied Buck's original summary judgment motion, filed separately from the other Defendants' motion. I reasoned that, on the record then before me, I could not determine whether Buck had inquired about Blankumsee's mental health, had access to his mental health records, or was supposed to consider his mental health in her medication evaluation. The denial was without prejudice to refiling with additional evidence about the scope of Buck's role in approving Blankumsee's placement in the isolation cell. *Id.* The facts outlined in the Memorandum Opinion (ECF No. 37) that accompanied the March 15, 2017 Order, as well as the standard of review for a motion for summary judgment, are incorporated here by reference and are repeated only where necessary to resolve Buck's pending Motion.

DISCUSSION

With the renewed Motion for Summary Judgment, Buck has refiled the affidavit she included with her first dispositive motion. Buck Aff., ECF Nos. 14-5, 40-4. In it, she explains that when prison custody officers suspect "an inmate . . . of having contraband inside of his or her body, the inmate is placed in SOH [Special Observation Housing] where the inmate can be observed twenty-four hours per day to prevent the inmate from destroying or discarding the contraband." Buck Aff. ¶ 6. Before an inmate is placed in SOH, a member of the medical staff evaluates the inmate "to ensure that the inmate is medically cleared to be housed in SOH." *Id*. ¶ 7. Buck states that medical staff members "do not determine when to place an inmate in SOH or the length of time the inmate stays in SOH." *Id.* ¶ 7. Rather, "[t]hose decisions are made solely by prison correctional staff." *Id.* As a member of the prison medical staff, Buck's "sole responsibility" was "to ensure that the inmate was medically cleared to be housed in SOH." *Id.*

Buck states that on August 2, 2015, she saw Blankumsee "for a wellness check to determine whether Plaintiff was medically cleared to be housed in SOH due to possible contraband in his rectum." *Id*. ¶ 8; *see also* Aug. 2, 2015 Med. Rec. Buck "did not see or treat Blankumsee at any other point during the timeframe relevant to Plaintiff's Complaint." Buck Aff. ¶ 10. On the August 2, 2015 evaluation, Buck "noted that Plaintiff was alert and oriented," his "vital signs . . . were all within normal limits," and he "appeared . . . to be in no distress." *Id.* ¶ 8. She also noted that Blankumsee's medications included vitamins, allergy medication, and topical medications. Aug. 2, 2015 Med. Rec. Of note, the Medical Record did not reflect that Blankumsee had any mental health issues, and it did not list any psychotropic medications. *See id.* Buck determined, "based on her professional nursing experience, training and clinical

judgment," that "Plaintiff was medically fit to be housed in SOH on August 2, 2015." Buck Aff. ¶¶ 9-10.

In support of her renewed dispositive motion, Buck also has filed an affidavit executed by Brenda Reese, R.N., who is employed by Wexford Health Sources, Inc., as Regional Director of Nursing for Western Maryland. Reese Aff., ECF No. 40-5.[3] Reese explains that the Psychology Department at WCI maintains the SOH area at WCI. Admission to the SOH and its operation are governed by WCI.124.0450.1. *Id* ¶ 3; *see also* Directive WCI.124.0450.1, ECF No. 40-6. Medical staff, including nurses and physicians, "are not allowed to admit inmates to SOH." Reese Aff. ¶ 5. Rather, "[m]edical staff are required to assess inmates for medical clearance for admission to SOH"; they are not responsible for providing, and do not provide, a "mental health assessment." *Id*. ¶¶ 7-8. Indeed, medical nurses typically are "not trained to conduct mental health assessments." *Id.* ¶ 8. It is the Psychology Department that maintains inmate mental health records and "conduct[s] mental health assessment of inmates for admission to . . . SOH." *Id.* ¶¶ 9, 10. As a result, a medical nurse who is evaluating "an inmate for clearance to SOH does not have unilateral access to the inmate's mental health records and is not responsible for reviewing an inmate's mental health records as part of a medical assessment." *Id.* The Directive itself appears focused on "identify[ing] inmates who require special mental health intervention and, when necessary, . . . provid[ing] a designated housing area where additional supervision and treatment may be available." Directive WCI.124.0450.1. Nonetheless, it does place responsibility for an inmate's mental health assessment with the Psychology Department. *See id.* ¶ E (At times, inmates will be placed in the SOH following referral from custody staff for observation and evaluation due to inappropriate behavior that is deemed potentially dangerous to

---

[3] Wexford is the private corporation that provides medical care to inmates throughout the Department of Public Safety and Correctional Services since July 1, 2012. Reese Aff.

4

self or others in the general population . . . . Following evaluation as to whether the behavior is characterological or a result of mental illness or other disability, a determination will be made by the Psychology Department Supervisor as to whether such inmates would benefit from further placement in the SOH. . . . Designated custody staff will assess the inmate every fifteen minutes or more . . . ."). Blankumsee does not refute Reese's assertions.

Considering these facts in the light most favorable to Blankumsee as the nonmoving party and drawing all justifiable inferences in his favor, there is no genuine dispute that Carla Buck's medical assessment of Blankumsee before his admission to the SOH was not constitutionally deficient because Buck was not trained, let alone required, to include an evaluation of his mental health condition in the medical assessment. Accordingly, Buck is entitled to summary judgment in her favor as a matter of law.

## CONCLUSION

For these reasons, I will grant Buck's Motion for Summary Judgment in the Order that follows.

February 22, 2012  \_\_\_\_\_/S/_____
Date  Paul W. Grimm
United States District Judge